**2016-1671**

# United States Court of Appeals for the Federal Circuit

ERICSSON INCORPORATED and
TELEFONAKTIEBOLAGET LM ERICSSON,

*Appellants,*

*v.*

INTELLECTUAL VENTURES I LLC,

*Appellee.*

*Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board, in No. IPR2014-00963*

## REPLY BRIEF OF APPELLANTS ERICSSON INCORPORATED and TELEFONAKTIEBOLAGET LM ERICSSON

STEVEN G. SPEARS
*Attorney of Record*

G. MATTHEW MCCLOSKEY
MCDERMOTT WILL & EMERY, LLP
28 State Street
Boston, MA 02109-1775
617.535.4000

JOHN C. LOW
MCDERMOTT WILL & EMERY, LLP
1000 Louisiana St., 39th Floor
Houston, TX 77002
713.653.1700

*Attorneys for Appellants*
*Ericsson Incorporated and Telefonaktiebolaget LM Ericsson*

August 11, 2016

**AMENDED CERTIFICATE OF INTEREST**

ERICSSON INCORPORATED V. INTELLECTUAL VENTURES I LLC

No. 16-1671

Counsel for Petitioners-Appellants ERICSSON INCORPORATED and TELEFONAKTIEBOLAGET LM ERICSSON ("ERICSSON") certifies the following:

1. The full names of every party or amicus represented by me are:

   ERICSSON INCORPORATED and TELEFONAKTIEBOLAGET LM ERICSSON

2. The names of the real parties in interest represented by me are:

   ERICSSON INCORPORATED and TELEFONAKTIEBOLAGET LM ERICSSON

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   None

4. The names of all law firms and the partners or associates that appeared for either ERICSSON INCORPORATED and TELEFONAKTIEBOLAGET LM ERICSSON in the trial court or agency or are expected to appear in this court are:

Steven G. Spears
John C. Low
MCDERMOTT WILL & EMERY LLP
1000 Louisiana St., 39th Floor
Houston, TX 77002
Telephone: 713.653.1700
Facsimile: 713.739.7592

G. Matthew McCloskey
MCDERMOTT WILL & EMERY LLP
28 State Street
Boston, MA 02109-1775
Telephone: 617.535.4000
Facsimile: 617.535.3800

/s/ Steven G. Spears

Steven G. Spears
MCDERMOTT WILL & EMERY LLP
1000 Louisiana St., 39th Floor
Houston, TX 77002
Telephone: 713.653.1700
Facsimile: 713.739.7592

# TABLE OF CONTENTS

**Page**


AMENDED CERTIFICATE OF INTEREST ........................................................i

TABLE OF AUTHORITIES ...........................................................................v

ABBREVIATIONS ..................................................................................... vii

ERICSSON'S REPLY BRIEF..........................................................................1

I. THE BOARD'S FINDING THAT CLAIMS 1-10 AND 12-16 WERE NOT ANTICIPATED SHOULD BE REVERSED ......................................3

A. The '480 Patent Discloses All Elements Of Claim 1...........................3

B. Substantial Evidence Does Not Support The Board's Finding That The '480 Patent's Disclosure Only Supported The Modulation Underlying GSM ..............................................................4

1. IV's Newly-Invented Modulation-Only Assertions Contradict Its Positions Before the Board .................................6

2. IV Cannot Recast The Underlying Basis For The Board's Anticipation Finding ..................................................................8

3. Neither IV's Actual Arguments Nor Substantial Evidence Supports The Board's Unsupported Finding ...........................10

C. IV's Alternative Plea For A Remand Should Be Rejected................12

II. THE BOARD'S CONCLUSION THAT CLAIMS 1-16 ARE NOT OBVIOUS SHOULD BE REVERSED. ......................................................12

A. The Board Failed To Do A Proper Obviousness Analysis Utilizing The Graham Factors..........................................................13

B. An Unrebutted Prima Facie Case of Obviousness Was Established.........................................................................................14

C. Because The GSM Standard Expressly Taught Frequency Hopping, The Board's Finding Of No Reasonable Expectation of Success Cannot Be Accepted........................................................16

D. The Board Erred In Not Addressing Whether There Would Have Been A Reasonable Expectation Of Success In Modifying The '480 Basestation To Do Frequency Hopping .............................19

**TABLE OF CONTENTS**
(continued)

**Page**


E. The Board's Finding That The '480 Basestation Could Not Frequency Hop Is Not Supported By Substantial Evidence ..............21

1. IV Does Not Defend The Board's Pivotal Finding That "the DP RAM Enable 202 of Figure 6 does not determine which slot is associated with which DSP." ..............21

2. IV Never Disputed That The Figure 6 Structure Could Do TDM-Bus-to-DSP Mapping..............23

3. No Evidence Supports The Board's Self-Devised Finding That "The DP RAM Enable 202 of Figure 6 does not determine which slot is associated with which DSP." ..............25

4. The Board's §103 Ruling Based On Its New Rehearing Finding Cannot Be Affirmed ..............28

5. IV's Unaccepted Arguments About VME Bus And Processor Speeds Cannot Salvage the Board's Decision ........29

F. IV's Reasons For Remand Cannot Avoid Reversal..............30

1. IV's Uncredited Arguments About VME Bus Speeds Provide No Basis For Remand..............30

2. IV's "Artisan" Arguments Utilize A Legally Incorrect Definition Of A POSA..............31

3. Claim 5 Provides No Basis For Remand ..............32

III. CONCLUSION..............33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Erecting & Dismantling, Co., Inc. v. Genesis Attachments, LLC.*,
2016 WL 3344093 (Fed. Cir. June 15, 2016) ....................16, 19

*Dell Inc. v. Acceleron, LLC*,
818 F3d 1293 (Fed. Cir. 2016) ....................12

*Dystar Textilfarben GmbH & Co. v. C.H. Patrick Co.*,
464 F.3d 1356 (Fed. Cir. 2006) ....................14

*Ex parte Hiyamizu*,
10 USPQ2d 1393 (BPAI 1988) ....................31

*Hynix Semiconductor Inc. v. Rambus Inc.*,
645 F.3d 1336 (Fed Cir. 2011) ....................16

*KSR Int'l, Inc. v. Teleflex, Inc.*,
550 U.S. 398 (2007)....................14, 15, 17, 19

*In re: Magnum Oil Tools Int'l*,
2016 WL 3974202 (Fed. Cir. July 25, 2016)....................29

*Nike, Inc. v. Adidas AG*,
812 F.3d 1326 (Fed. Cir. 2016) ....................13

*SAS Inst., Inc. v. ComplementSoft, LLC*,
2016 WL 3213103 (Fed. Cir. June 10, 2016)....................28

*Soverain Software, LLC v. Newegg, Inc.*,
705 F.3d 1333 (Fed. Cir. 2013) ....................15, 19

*Standard Oil Co. v American Cyanamid Co.*,
774 F.2d 448 (Fed. Cir. 1985) ....................31

*Tyco Healthcare Group LP v. Ethicon Endo-Surgery, Inc.*,
774 F.3d 968 (Fed. Cir. 2014) ....................31

*WBIP LLC v. Kohler Co.*,
2016 WL 3902668 (Fed. Cir. July 19, 2016)....................2, 13

*In re Zurko*,
258 F.3d 1379 (Fed. Cir. 2001)....................9, 25

**Statutes**

35 U.S.C. §102....................12

35 U.S.C.§103....................*Passim*

# ABBREVIATIONS

| | |
|---|---|
| Ericsson or Petitioners | Petitioners–Appellants Ericsson Incorporated and Telefonaktiebolaget LM Ericsson |
| IV or Patent Owner | Patent Owner-Appellee Intellectual Ventures I LLC |
| USPTO | United States Patent & Trademark Office |
| IPR | *Inter Partes* Review proceeding |
| Board or PTAB | The USPTO Patent Trial and Appeal Board |
| the '408 Patent | U.S. Patent No. 6,952,408 B2 (Appx1074-1092) |
| the '480 Patent | U.S. Patent No. 5,592,480 (Appx1318-1336) |
| the '435 Patent | U.S. Patent No. 5,537,435 (Appx1337-1393) |
| GSM 5.02 | Recommendation GSM 05.02, Radio Sub-system Link Control, EUROPEAN TELECOMMUNICATIONS STANDARDS INSTITUTE v. 3.8.0 (Dec. 1995) (Appx1433-1469) |
| Petition | The Corrected Petition for *Inter Partes* Review filed by Ericsson in Case IPR2014-00963 before the Board (Appx227-273) |
| Final Decision | The Final Written Decision in IPR2014-00963 dated October 22, 2015 (Appx1-34) |
| Rehearing Decision | The Decision On Request For Rehearing in IPR2014-00963 dated December 22, 2015 (Appx35-46) |
| POSA | Person of Ordinary Skill in the Art |
| Airnet | Airnet Communications Corporation, the original assignee of the '480 Patent, the '435 Patent, and the '408 Patent |
| ETSI | European Telecommunications Standards Institute |
| RF | Radio Frequency |
| DSP | Digital Signal Processor |

| | |
|---|---|
| TDM Bus | Time Division Multiple-Access Bus |
| VME Bus | VERSAmodule Eurocard Bus |
| Appx__ | Page ___ in Joint Appendix |
| Appx__(xx:yy-zz) | Page ___ in Joint Appendix citing to column xx and lines yy through zz of a patent |
| Opening | Opening Brief Of Appellants Ericsson Incorporated and Telefonaktiebolaget LM Ericsson (filed May 9, 2016) |
| Opposition | Brief For Appellee (filed July 18, 2016) |

**NOTE**: All emphasis has been added to quotations herein unless otherwise noted

**ERICSSON'S REPLY BRIEF**

According to IV, the '408 Patent covers all frequency hopping methods using any broadband basestation. Yet IV does not dispute that (i) the prior art taught frequency hopping methods, including under the GSM standard, (ii) the prior art contained GSM frequency hopping basestations, (iii) the '480 Patent disclosed a broadband basestation that differed from the '408's by only an unclaimed, conventional memory component, and (iv) the '480 Patent's broadband basestation is stated to support "frequency hopping standards … such as GSM." Appx1331(5:9-17). The only reasonable conclusion is that the '408 Patent's claims are anticipated and obvious.

Striving to uphold the Board's self-devised "no anticipation" finding, IV's Brief is its first ever assertion that the '480 Patent's disclosure at Appx1331(5:4-17) would have been understood as supporting only modulation and not performance of the specified air interface standards. IV's belated arguments cannot cure the absence of record evidence for the Board's finding that only modulation was supported.

IV does not even attempt to defend the lack of a proper *Graham* analysis by the Board. Instead, IV dismisses that challenge as not having "any relevance to this appeal." Opposition 37. IV even agrees that the *Graham* factors "were not a basis for the Board's non-obviousness findings." *Id.* at 38. However, any

determination under §103 "requires consideration of all four *Graham* factors, and it is error to reach a conclusion on obviousness until all those factors are considered." *WBIP LLC v. Kohler Co.*, 2016 WL 3902668, at *5 (Fed. Cir. July 19, 2016). On that basis alone, the Board's §103 decision should be reversed.

Here, the Board ignored that the prior art disclosed every claim element such that no differences existed. Unmoored from that critical predicate, the Board's analysis lacked any perspective from which to decide whether the claimed methods would have been obvious. Because IV had no secondary considerations evidence, all four *Graham* factors strongly established obviousness and constituted an unrebutted *prima facie* case.

IV also concedes the '480 Patent's express motivation to combine its broadband basestation to implement known prior art frequency hopping standards like GSM. Given GSM's explicit frequency hopping teachings, the Board legally erred in considering only whether the '480 Patent's basestation embodiment could frequency hop while ignoring the prior art's teachings as a whole. GSM frequency hopping basestations were known, and IV never explained how following GSM's explicit instructions on a broadband basestation would have been anything but routine and predictable.

The only reasonable conclusion from the record below is that the '480 Patent's disclosed basestation, itself, also supported frequency hopping. No

substantial evidence supports the Board's rehearing finding that the basestation could not map incoming data to DSPs on grounds that "the DP RAM Enable 202 of Figure 6 does not determine which slot is associated with which DSP." This pivotal finding, now solely determinative of the Board's "no expectation of success" ruling was never argued or evidenced by IV, and never even mentioned in IV's Opposition. All record evidence was to the contrary, including IV's repeated concessions that the '480 Patent's basestation supported phone calls which required this mapping. Hence, the Board's nonobviousness ruling should be reversed as a matter of law.

## I. THE BOARD'S FINDING THAT CLAIMS 1-10 AND 12-16 WERE NOT ANTICIPATED SHOULD BE REVERSED.

IV does not dispute contending that a broadband basestation that performed GSM frequency hopping would meet every element of claim 1. *See* Opening 33. IV's attempts to defend or distract from the Board's self-devised "modulation-only" interpretation of the '480 Patent should be rejected.

### A. The '480 Patent Discloses All Elements Of Claim 1.

IV insists that the "[t]he '408 patent claims innovative methods for frequency hopping in a basestation having a broadband transceiver." Opposition 2. However, IV cannot dispute that frequency hopping methods were well-known, as were the teachings and algorithm of the GSM standard. Appx12-13.

Lacking anything "innovative" in the claimed method, IV identifies only the last step of "changing from a first of said physical RF channels … to a second of said physical RF channels, while maintaining a same logical channel." Opposition 2. But that "changing" step was a fundamental element of existing frequency hopping methods. Opening 13-14. Indeed, the GSM standard (Opening 21) is precisely what IV relies upon (Opposition 3) when explaining the claimed "changing."

Despite touting "the advance of the '408 patent's invention" over the earlier '480 basestation, IV identifies neither the "advance" nor the "invention." Opposition 4. The '480 and '408 basestations admittedly were nearly identical, with the sole, allegedly relevant difference being a "dual port" memory component added in '408 Patent Figure 8 relative to '480 Patent Figure 3. Opening 19. The '408 Patent described that memory as "conventional" (Appx80(8:28-32)) and it is not recited by claim 1. Opening 14-20.

### B. Substantial Evidence Does Not Support The Board's Finding That The '480 Patent's Disclosure Only Supported The Modulation Underlying GSM.

Ericsson's Petition explained that frequency hopping techniques were known, that the "changing" step recited a basic frequency hopping feature, and how frequency hopping would have been done using the '480 Patent's broadband

basestation. Appx245-257. Nevertheless, IV incorrectly suggests that Ericsson's anticipation case "hung on a single sentence." Opposition 8.

Anticipation is viewed from the perspective of one of ordinary skill in the art. *See* Opening 34. Given the knowledge of a POSA, multiple sentences in the '480 Patent taught performing frequency hopping using its broadband basestation:

> More particularly, the basestation exchanges radio frequency (RF) signals with a number of mobile subscriber terminals (mobiles) 40a, 40b. The RF carrier signals are modulated with voice and/or data (channel) signals which are to be coupled to the public switched telephone network (PSTN) by the basestation 10. **The particular modulation in used [*sic*] may be any one of a number of different wireless (air interface) standards such as** the well-known Advanced Mobile Phone Service (AMPS), time division multiple access (TDMA) such as IS-54B, code division multiple access (CDMA) such as IS-95, **frequency hopping standards such as the European Groupe Speciale Mobile (GSM)**, personal communication network (PCN) standards, **and the like**.

Appx1331(5:4-17); Appx1035(¶78). Such disclosure unmistakably directed a POSA to GSM frequency hopping as one of the supported standards.

Citing this same disclosure, IV conceded before the Board that the '480 Patent "states that **it could be used to support a number of wireless standards such as AMPs, IS54B, IS-95, GSM and PCN**." Appx384; Opening 38. Dr. Wells likewise agreed that "the language of the '480 Patent says **it can perform a variety of wireless standards**" (Appx258(33:6-13)) including the same listed standards. Opening 26, 38-39. Dr. Wells described at length how the '480 Patent's basestation could not just support at least non-hopping phone calls

(Appx2606-2613(81:3-88:10); Appx3337-3338(¶70)) but could remap the TDM bus periodically when supporting calls under those standards. *See* Opening 26; Appx2655-2659(130:10-134:12). The '480 Patent also makes clear that it supports phone calls, not just modulation, under those standards. Appx1330(3:51-55); Appx1332(7:34-46); Apx1333(9:12-41); Appx1333-1334(10:49-11:30).

Before the Board, IV disputed only whether GSM frequency hopping was encompassed by the specification's list because it was an optional under GSM. Appx382-384. IV's efforts to excise GSM frequency hopping from a list which expressly recites "frequency hopping standards such as [GSM]" is fully refuted at Opening 34-36, and cannot reasonably be accepted.

It was instead the Board's finding which "hung on a single sentence," resting entirely upon its self-devised finding that the above passage "states, at most, that the system described in the '480 patent supports the *modulation* specified by the GSM standard." Appx17. Because IV and Dr. Wells admitted that this passage states that each listed standard was supported, and not just their underlying modulation, the Board's pivotal underlying finding was entirely contradicted by the record.

### 1. IV's Newly-Invented Modulation-Only Assertions Contradict Its Positions Before the Board.

IV's assertion on appeal that the '480 Patent basestation only did the GMSK modulation underlying GSM (Opposition 21-23) cannot be squared with its

repeated admissions that the ‘480 patent basestation supported phone calls under the listed air interface standards. GMSK modulation is but a small part of the overall GSM standard cited in the ‘480 Patent. GMSK occupies just one of ten substantive sections in GSM 5.01’s table of contents (Appx1421) and just four lines of its eleven-page description of the standard’s physical layer. Appx1417-1432, at Appx1429. A basestation that did only GMSK modulation and not GSM’s other aspects would thus have, for example, no channels (Appx1422), no multiple access (Appx1424), no coding (Appx1427), no assigned radio frequencies or defined power levels (Appx1429), and no channel quality management (Appx1430).

A modulation-only basestation thus could not support phone calls under the air interface standards without these other required features. For example, phone calls could not be placed on a basestation that just did GMSK modulation but lacked channels or understood frequencies. IV’s suggestion now that the ‘480 basestation could only support modulation is thus a complete change from IV’s position before the Board that phone calls under the listed standards were fully supported.

Further reinventing its position on appeal, IV now deems it “relevant to this appeal” that GSM uses a particular “modulation technique known as Gaussian minimum shift keying (GMSK).” Opposition 7. However, neither IV nor its expert, Dr. Wells, ever mentioned GMSK before the Board. The ‘480 Patent,

likewise, never mentions GMSK. IV thus has no support for limiting the '480 Patent's teachings to implementing only a GMSK modulation never referenced in the '480 Patent or in IV's arguments below.

While the word "modulation" now inundates the Opposition, the term rarely appeared in IV's briefing below. Even then, IV equated "modulation" with "frequency hopping" or air interface "standards" rather than treating them as distinct concepts. *See* Appx380(referencing "**frequency-hopping modulation**"); Appx387(agreeing the '480 Patent would support frequency hopping if it stated "the particular **modulation used may be … frequency hopping** according to the GSM standard"); Appx382 and Appx383 (referencing GSM and PCN as "modulation standards"). The '480 patent likewise equates these terms. *See* Appx1330(3:38-39) and Appx1334(12:18) (both referencing "modulation or air interface standard"); Appx1331(5:9-11) ("The modulation … may be any one of a number of different wireless (air interface) standards.") The Board thus initially found that "frequency hopping is a modulation technique." Appx3. While IV dismisses that as "just a drafting error" (Opposition 25 n.2), the Board's actual error was departing from that initial finding.

### 2. IV Cannot Recast The Underlying Basis For The Board's Anticipation Finding.

IV does not dispute the Board's failure to cite "concrete evidence in the record in support of [its] findings" as required by *In re Zurko*, 258 F.3d 1379, 1386

(Fed. Cir. 2001). Without such evidence, IV points to an alleged "plain-language reading," arguing that the cited passage does not show that "the basestation provides frequency-hopping functionality." Opposition 21. According to IV, "the '480 reference is simply disclosing that the described basestation can modulate and demodulate carrier signals in accordance with the modulation approach employed by several standards." Opposition 22. But like the Board's finding, IV cites no support in the record. Instead, IV's own expert reached the opposite interpretation, agreeing that phone calls under the listed air interface standards, and not just their modulation schemes, were fully supported. *See* Opening 37-38.

IV also cites Dr. Wells' discussion of Figure 9 and how the '480 Patent's basestation could simultaneously support TDMA and CDMA modulation. Opposition 22-23. However, IV omits Dr. Wells' testimony that "FIG. 9 from the '480 patent illustrates a basestation … **that supports multiple air interface standards** and associated modulation standards." Appx3328(¶52). Accordingly, Dr. Wells's Figure 9 testimony does not support limiting the '480 Patent's basestation to supporting only modulation. Instead, Dr. Wells stated exactly the opposite, again agreeing that the listed air interface standards were supported.

Getting no support from Dr. Wells, IV cites Dr. Stark's testimony explaining that the GSM standard uses GMSK modulation. Opposition 22. Without Dr. Stark's testimony, the term "GMSK" would not have appeared in the record.

However, Dr. Stark's mere identification of GMSK modulation provides no evidence that the '480 Patent's basestation can support only that modulation and not phone calls.

IV also cites the Oral Hearing exchange about whether GSM uses the same modulation whether frequency hopping or not. Opposition 24-25 (citing Appx672(17-23)). Ericsson's counsel correctly stated that it did, while explaining that no reason thus existed to reference frequency hopping standards unless the '480 basestation did frequency hopping. Appx672(1-24). While IV now suggests that this "confirmed that GSM's modulation is distinct from its frequency-hopping component" (Opposition 24), any such distinction is irrelevant to whether the '480 Patent supports only GMSK modulation and not phone calls under the listed air interface standards.

### 3. Neither IV's Actual Arguments Nor Substantial Evidence Supports The Board's Unsupported Finding.

IV incorrectly claims (Opposition 26-27) to have argued below that the '480 Patent's basestation could support only GMSK modulation. IV, once again, only cites its arguments that GSM frequency hopping was somehow excluded from a list that includes "frequency hopping standards … such as GSM" just because it was "optional." The Board rightly did not accept IV's actual assertion. Opening 34-36.

IV further asserts that "Dr. Wells did not testify that the relevant structure of the '480 reference disclosed support of 'the specified air-interface standards.'" Opposition 27-28. But as quoted at Opening 38-39, this is exactly what he said, testifying, for example:

> Q: So the language of the '480 Patent says it can perform a variety of wireless standards, right?
>
> A: Yes, it does.

Appx2558(33:6-13). While IV complains that Ericsson "cherry picked" (Opposition 27), IV itself admitted that the '480 Patent "states that it could be used to support a number of wireless standards, such as AMPs, IS54B, IS-95, GSM, and PCN." Appx384. Moreover, Dr. Wells agreed that the passage meant that the '480 basestation "can support GSM" and "characterizes GSM as a frequency hopping standard," but then insisted that the passage did not "say that it supports frequency hopping." Appx2559(34:3-14). His refusal to concede the conclusion from his admissions is indeed a "quibble," and was never credited by the Board. *See* Opening 38.

Hence, no substantial evidence supports the Board's sole finding for why the '480 Patent allegedly did not teach the "changing" step of claim 1. At a minimum, the Board erred in raising this new, self-devised theory at oral argument, giving Ericsson a limited opportunity to respond. *Dell Inc. v. Acceleron, LLC*, 818 F3d 1293, 1301 (Fed. Cir. 2016).

### C. IV's Alternative Plea For A Remand Should Be Rejected.

IV asks this Court to remand rather than reverse if the Board's decision is unsupported. Opposition 29-30. The only issue that IV identifies is whether the '480 Patent's basestation would have been enabled for frequency hopping. Opposition 29. However, the burden of proof was IV's, requiring proof of undue experimentation under the *Wands* factors. Opening 41-42; *see* Appx441. Having introduced no such evidence, IV is not entitled to "a second bite at the apple."

As before the Board, IV has advanced no unique novelty for claims 2-10 and 12-16, and thus claim 1 governs those dependent claims. *See* Opening 42. Accordingly, this Court should reverse the Board and hold claims 1-10 and 12-16 unpatentable under 35 U.S.C. §102.

## II. THE BOARD'S CONCLUSION THAT CLAIMS 1-16 ARE NOT OBVIOUS SHOULD BE REVERSED.

Even if the '480 Patent did not teach the "changing" step of claim 1, Ericsson independently demonstrated that the Board's obviousness analysis and conclusion were legally incorrect. As shown below, claims 1-16 are unpatentable under §103 as a matter of law.

### A. The Board Failed To Do A Proper Obviousness Analysis Utilizing The *Graham* Factors.

The Board legally erred by failing to undertake a proper obviousness analysis based on the required factual inquiries under *Graham*. *See* Opening 43-45. IV ignores rather than disputes that reversible error.

Instead, IV readily agrees that the *Graham* factors "were not a basis for the Board's non-obviousness findings." Opposition 38. IV's concession underscores the Board's fundamental error. This Court has "repeatedly emphasized that an obviousness inquiry requires examination of all four *Graham* factors and that an obviousness determination can be made only after consideration of each factor." *Nike, Inc. v. Adidas AG*, 812 F.3d 1326, 1334 (Fed. Cir. 2016); *see WBIP*, 2016 WL 3902668, at *5 ("it is error to reach a conclusion of obviousness until all those factors are considered"). On that basis alone, the Board's obviousness decision cannot stand.

IV could not dispute that every claim element was in the prior art before the Board. Given the '480 Patent's explicit reference to the GSM frequency hopping standard (Appx1331(5:4-17)), IV also could not dispute that the prior art expressly motivated and taught utilizing the '480 Patent's broadband basestation to accomplish GSM frequency hopping. Opposition 37. Instead, IV asserts that neither of those undisputed facts "have any relevance to this appeal." *Id*. IV cannot be more wrong.

Bypassing any principled analysis of the *Graham* factors, the Board jumped instead to deciding whether a POSA had a reasonable expectation of success in using the particular basestation disclosed in the ‘480 Patent for the claimed frequency hopping method. Appx21. However, the Board could not properly evaluate that issue without first appreciating that the prior art contained every claim element, an express motivation for combining them, and clear teachings by which to arrive at the claimed method.

Unquestionably, the Board did not use the factual framework and legal inquiry mandated under *Graham*. *See KSR Int'l, Inc. v. Teleflex, Inc.*, 550 U.S. 398, 418 (2007) ("this analysis should be made explicit"). The Board's now-conceded failure is grounds for reversal by itself.

### B. An Unrebutted *Prima Facie* Case of Obviousness Was Established.

Each of the *Graham* factors unmistakably point towards obviousness. *See* Opening 43-47. No differences existed between the prior art and the claims, the Board accepted the parties' agreement on the level of ordinary skill (Appx21), and IV advanced no secondary considerations of non-obviousness. Appx20(n.3). Moreover, the prior art provided an express motivation to combine and teachings for doing so. Opening 45-46. *See Dystar Textilfarben GmbH & Co. v. C.H. Patrick Co.*, 464 F.3d 1356, 1370 (Fed. Cir. 2006) ("this court customarily

discusses a motivation to combine as part of the first *Graham* factor, the scope and content of the prior art").

IV does not and cannot dispute any of this. Opposition 37. Instead, IV again asserts that this does not "have any relevance to this appeal." *Id.* Once again, IV is wrong. The Board's failure to recognize this unrebutted *prima facie* case of obviousness underscores its flawed analysis. Having bypassed the predicate *Graham* findings, the Board clearly could not and did not draw its legal conclusion based on those mandated findings.

Moreover, the Board's labeling of Ericsson's proof of an unrebutted *prima facie* case of obviousness as "sparse" (Appx23; Opposition 31) further highlights the Board's failure to conduct a proper *Graham* analysis. This further underscores a failure to appreciate that the prior art provided a POSA with all elements of the claimed invention and an express motivation for combining them to achieve the claimed invention.

Finally, this Court can decide obviousness as a matter of law where "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors." *KSR*, 550 U.S. at 427. Under such circumstances, "remand [is] unnecessary." *Soverain Software, LLC v. Newegg, Inc.*, 705 F.3d

1333, 1337 (Fed. Cir. 2013). Because these factors are all established here, under a proper *Graham* analysis, claims 1-16 are unpatentable as a matter of law.

### C. Because The GSM Standard Expressly Taught Frequency Hopping, The Board's Finding Of No Reasonable Expectation of Success Cannot Be Accepted.

Where only one reasonable conclusion can be drawn from the record, a determination contrary to that conclusion cannot be supported by substantial evidence. *See, e.g.*, *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1351 (Fed Cir. 2011). Given the teachings of the widely-implemented GSM standard, the Board's finding that there would not have been a reasonable expectation of success in combining frequency hopping with a broadband basestation is not supported by substantial evidence. *See* Opening 47-50.

IV nowhere disputes that a proper obviousness analysis does not look to whether the prior art references may be "physically combined." Opening 48; *accord*, *Allied Erecting & Dismantling, Co., Inc. v. Genesis Attachments, LLC.*, 2016 WL 3344093 at *5 (Fed. Cir. June 15, 2016) (recently holding that "[t]he test for obviousness is not whether the features of a secondary reference may be bodily incorporated into the structure of the primary reference"). IV likewise does not dispute that this is exactly what the Board improperly did when examining just whether the '480 Patent's embodied basestation could perform GSM frequency hopping, without examining the teachings of the prior art as a whole. *Id.*

Under a proper obviousness analysis examining the prior art's teachings as a whole, including the expectation of success provided by the GSM standard, IV offers no reason why frequency hopping on a broadband basestation was any different than what had already been done on a narrowband basestation. Opening 49. As explained in *KSR*, 550 U.S. at 416, "[t]he combination of familiar elements according to known methods is likely to be obviousness when it does no more than yield predictable results." Indeed, IV had no evidence showing unexpected results, failure by others, or anything unpredictable about combining known frequency hopping methods with a broadband basestation.

Rather than address substantively whether a reasonable expectation of success is indisputably established by the GSM standard's teachings, IV instead offers only three procedural objections for why those teachings should be ignored. All are without merit.

First, IV asserts that Ericsson never argued that GSM provided an expectation of success. Opposition 38. That is not true. The Petition showed that "[a] POSA would understand that the GSM standard contains details about how frequency hopping works" (Appx251), that "GSM 5.02 provides precise instructions for implementing frequency hopping" (*id.*), and that "[a] POSA would know that GSM 5.02 expressly defines how frequency hopping is to be implemented for GSM." Appx253.

Ericsson's Reply further explained that "Patent Owner did not dispute that a POSA would have known the [changing step] limitation from GSM 05.02" (Appx430); that the "'480 Patent states that it uses frequency hopping, which alone provides a reasonable expectation of success" (Appx431); that Dr. Wells admitted that "basestations that support frequency hopping were known before 1998" (Appx431-432); and specifically that: "Patent Owner is wrong in asserting that Petitioner presented no evidence of an expectation of success. Patent Owner again forgets that the '480 Patent itself states that its basestation uses GSM frequency hopping." Appx445.

Second, IV alleges that no evidence shows that a POSA would have understood how to frequency hop based upon GSM 5.02. Opposition 39. However, the record evidence is to the contrary. GSM's teachings were cited at Opening 20-22, which IV adopted in its brief. *See* Opposition 3-4. Ericsson also cited the Board's findings that "GSM 5.02 describes an algorithm for mapping logical channels onto physical channels" and "an algorithm for hopping sequence generation." Appx13. Notably, IV has shown no error in those findings.

Third, IV argues Ericsson's reliance on the undisputed expectation of success provided by the GSM standard "merely creates a fact in dispute" that cannot overcome the substantial-evidence standard. Opposition 39. However, IV ignores that the Board made no finding on whether GSM provided a reasonable

expectation of success, so there is no such finding to which the substantial evidence standard would apply.

As shown, the Board applied the wrong legal analysis under *Allied Erecting* in finding no reasonable expectation of success. There is only one reasonable conclusion on this issue. Thus, with the *Graham* factors established, obviousness can be decided as a matter of law with no remand. *Soverain Software*, 705 F.3d at 1337.

### D. The Board Erred In Not Addressing Whether There Would Have Been A Reasonable Expectation Of Success In Modifying The '480 Basestation To Do Frequency Hopping.

IV likewise does not dispute that a proper obviousness analysis looks to whether a POSA would have a reasonable expectation of success in adapting the prior art to achieve the claimed method. *See* Opening 48, 59-64. The '480 and '408 basestations differed by the one conventional, unclaimed memory component. Even if that memory was needed, IV never explained why a POSA would not have known how to add it. *KSR*, 550 U.S. 421 (a POSA is "a person of ordinary creativity, not an automaton").

Adding a known memory element to a known basestation (if required for frequency hopping) cannot avoid obviousness unless doing so was beyond the routine grasp of a POSA. *Id.* at 416. Dr. Stark provided unrebutted testimony that if GSM frequency hopping required more memory, "[a] simple solution that a

POSA would be well aware of would be to have two sets of memory locations in DP-RAM 202." Appx2512(¶30); Appx2920(164:4-14).

Unable to disagree, IV again offers only procedural objections, again wrongly claiming waiver. Opposition 47. No waiver occurred. Ericsson consistently asserted that the '408 basestation added only the single unclaimed memory component. Appx248-249; Appx431; Appx433; Appx446. Ericsson also maintained that a POSA "would have a reasonable expectation of success in storing a type of data in a well-known memory device." Appx448. At the oral argument, Ericsson further emphasized that adding memory was simply an obvious design choice. Appx550-551; Appx641; Appx676-679.

IV's only other objection is that Ericsson did not address the *Graham* factors (Opposition 47), ignoring that the proposed modification involved the same two references – the '480 Patent and the GSM standard. The *Graham* factors were thus fully addressed for this combination and IV does not dispute that they establish an unrebutted *prima facie* case of obviousness. *See* II(A-B), *supra*. Accordingly, the Board's conclusion of nonobviousness can be independently reversed on the grounds that a POSA would have known how to modify the '480 Patent's basestation to achieve the claimed method by adding conventional memory, if more memory was even needed.

## E. The Board's Finding That The '480 Basestation Could Not Frequency Hop Is Not Supported By Substantial Evidence.

The Board's unsupported "expectation of success" and "operability" analyses erred in examining only whether the '480 Patent's disclosed basestation could frequency hop. *See* Opening 50; Appx28. Nevertheless, even examining the Board's unduly-limited inoperability finding, it is also unsupported.

### 1. IV Does Not Defend The Board's Pivotal Finding That "the DP RAM Enable 202 of Figure 6 does not determine which slot is associated with which DSP."

The Board's "expectation of success" and inoperability findings were based entirely upon its underlying finding—rendered for the first time in denying rehearing—that "the DP RAM Enable 202 of Figure 6 does not determine which slot is associated with which DSP." Appx41. Ericsson's position is simple: substantial evidence does not support that finding. Opening 10, 55. The issue is now even simpler because IV's Opposition does not even mention this specific, determinative finding, and offers nothing to defend it.

IV instead defends other findings, such as arguing (i) that Ericsson did not prove that "the '480 reference could be modified to implement frequency hopping through reprograming the DP RAM Enable 202 alone" (Opposition 42 (citing Appx26)), and (ii) that "Petitioner's arguments as to Figure 6 [are] unpersuasive … for the same reasons stated … for Figure 3." Opposition 44 (citing Appx41).

Because those discredited findings were superseded by the Board's rehearing finding, IV's attempt to divert attention to them should be disregarded.

IV's inoperability position below was only that the '480 Patent's basestation could not remap data fast enough to support frequency hopping. *See* Opening 27-28, 51-52. IV's "speed-based" challenge utilized the FFT-to-TDM bus structure in Figure 3 as representative of the basestation's parallel structure elsewhere. *See* Opening 52-55; Appx405. Examining only Figure 3, the Board found on its own that the Figure 3 structure "would not provide a different mapping" to the DSPs. Appx27. When Ericsson demonstrated for rehearing that the "missing" mapping was indisputably done by parallel structure in Figure 6, the Board conceded that it had not discussed Figure 6, but maintained that remapping Figure 6's structure would not "provide a different mapping between the data sorted in DP RAM Data 204 and the DSPs." Appx41.

The Board's sole supporting basis was its new finding, first rendered in denying rehearing and never advanced by IV, that "the DP RAM Enable 202 of Figure 6 does not determine which slot is associated with which DSP." Appx41. The reason why IV does not defend that finding is clear. The structure in Figure 6 necessarily had to associate slots with DSPs—otherwise the basestation could not support any calls, which all of the evidence confirmed that it could. *See* Opening

55-59, at 58. IV's actual operability challenges related to VME bus and processor speeds, were never accepted by the Board. Opening 51-52.

### 2. IV Never Disputed That The Figure 6 Structure Could Do TDM-Bus-to-DSP Mapping.

IV suggests that Figure 6 was not properly raised before the Board. Opposition 44-45. Not only was Figure 6 in evidence, but its function in accomplishing TDM Bus-to-DSP mapping was expressly acknowledged and never disputed by IV.

Ericsson's Petition explained and evidenced how the "'480 Patent discloses specific structure that is used for mapping communications from physical RF channels through a TDM bus acting as a 'cross bar switch' to various DSPs for implementing communications that is compliant with the GSM Standard." Appx249-59; Appx255; Appx261. The Petition did not cite Figure 6 directly, but relied on the specification's discussion of Figure 6 as part of a "detailed description explain[ing] how the data in a specific time slot is mapped or routed from the TDM bus 16 to a specific digital signal processor ('DSP')." Appx250(citing Appx1333(10:27-47 – discussing Figure 6). That is the very evidence that the Board originally found "missing" from Ericsson's proof.

As IV concedes, Dr. Stark's deposition explained how the mirror-image structure in Figure 6 would appropriately map data off the TDM bus to the DSPs by updating the mapping in Figure 6's DP Ram Enable 202 every hopping period

(just as done with Figure 3). Opposition 44-45; *see* Opening 25. IV itself submitted Dr. Stark's transcript to the Board, thus putting it in evidence. Appx373. As IV acknowledges, Dr. Stark also correctly explained the timing for the Figure 6 mapping to support frequency hopping in his Reply declaration. Opposition 45; Appx2513(¶13).

IV clearly understood Ericsson's position regarding the TDM-bus-to-DSP mapping controlled by Figure 6. Indeed, IV explained Ericsson's position to the Board as follows:

> Data transfer onto TDM bus 16 is synchronized through TDM Clk and TED Frame Sync. (*Id*., FIG 3.). Data transfer off TDM bus 16 is synchronized through the TDM Clk and TDM Frame Sync signals. (*Id*., Fig. 6).

Appx393. IV further relied upon the need to remap numerous DP Ram Enable 202s, including the one in Figure 6, to support frequency hopping when making its speed-based arguments. Appx405; Appx407. Having recognized the role of Figure 6, IV cannot legitimately now characterize Ericsson's argument as being that only "Figures 1-3 would provide this mapping function to enable the frequency hopping." Opposition 32.

Before the Board, there was thus no dispute that Figure 6's structure mapped data off the TDM bus in the same way that Figure 3's structure mapped it on. This only became an issue due to the Board's mistaken finding in its Final Decision. The Board's misunderstanding was underscored by its belief that Dr. Stark's

deposition testimony represented a "change in position" when he explained that structure beyond Figure 3 was needed to map data to the DSPs. Appx30-31. Tellingly, IV never even cited that deposition testimony. *See* Opening 53 n.9; Appx469.

**3. No Evidence Supports The Board's Self-Devised Finding That "The DP RAM Enable 202 of Figure 6 does not determine which slot is associated with which DSP."**

IV does not dispute the requirement that the Board cite evidence to support its findings. *Zurko*, 258 F.3d at 1386. Nor does IV dispute that the only evidence cited by the Board for its rehearing finding was Appx1333(10:36-43) which does not support the finding. *See* Opening 55-57. While IV tries to find other supporting evidence, none of it remotely suggests that "[t]he DP RAM Enable 202 of Figure 6 does not determine which slot is associated with which DSP."

IV first argues that information must be placed on the TDM bus in the right order to be routed to the correct DSPs. Opposition 32-33. But IV cites only the Board's opinion (Appx26), which is clearly bootstrapping. Moreover, as IV recognized below, sending data maps to the DP Ram Enable 202 in Figure 6 maps data off of the TDM bus to the right DSPs. Appx393; Appx405; Appx407. IV's red-line/green-line depiction of Figure 1 appears to suggest that there is nothing between the TDM bus and the DSP Processor to provide such mapping. *See*

Opposition 34. Figure 2 (nearly identical in the '480 and '408 Patents) reveals that any such suggestion is incorrect:



*Fig. 2*

What Figure 1 shows as "DSP 18-1-1" is actually a multi-component system, which Figure 2 reveals includes a TDM FIFO Receiver between the TDM Bus and the DSP Processor (shown above, also on a green path). Figure 6 is that TDM FIFO Receiver. *See* Opening 56 n.10. IV disregards this Figure 6 structure by using only Figure 1 for its red-line/green-line representation.

IV then repeats the Board's mischaracterization of Ericsson's position as being only that "the data programed in the DP RAM Enable 202 provides a mapping between particular channels and particular TDM time slots." Opposition 35. However, what the Board did not appreciate, but what IV did (and previously argued) was that the '480 Patent system has multiple DP RAM Enable 202s which would be remapped, including the one in Figure 6. Appx405. IV cannot show the

Board's challenged findings are supported by substantial evidence merely by citing and quoting them.

IV next cites its own arguments using the term "mapping structure" to suggest that substantial evidence exists because both IV and the Board used this term. Opposition 36-37. But IV's briefing (Appx395-400) argued only that a mapping structure was lacking (for anticipation) because the mapping to the DSPs is done at call set-up. Appx395-398. IV also incorrectly suggested that the '408 Patent discloses an additional memory allegedly required for frequency hopping. Appx399-400.[1]

IV and Dr. Wells thus never argued or evidenced that a "mapping structure" was missing because the '480 basestation could not map data to the DSPs, which was the sole basis for the Board's challenged finding. Instead, even in the cited testimony, they both agreed that "[a] logical '1' is also written into the enable DP-RAM in the TDM receiver 180-1 associated with the DSP demodulator 18-1 previously identified as an available resource in order to enable that DSP resource." Appx397; Appx3350(¶93). Notably, the referenced "TDM receiver"

---

[1] That also is the substance of Dr. Wells's cited testimony. *See* Appx3339(¶73)('408 adds FHOP memory); Appx3348(¶90) and Appx3350-3352(¶¶93-97)(arguing '480 lacks the "mapping structure" provided by the added memory); Appx3349(¶91)(conceding '480 mapping structure is mapping the DP Ram Enable 202s).

providing this mapping is what is diagramed in Figure 6.[2] Thus, even IV's cited evidence refutes the Board's finding by conceding that DSP mapping. This evidence comports with Dr. Well's repeated testimony that Figure 6 provides this TDM-bus-to-DSP mapping. Opening 58.

Finally, IV cites Dr. Wells as evidencing that the DSP mapping "is maintained by the DP RAM 204," and that "the '480 reference lacks a way to properly order frequency hopped signals on DP RAM 204." Opposition 36-37 (citing Appx3300-3331(¶55); Appx3348-3333(¶90-96)). IV, here, mimics the Board's similar analysis of DP RAM 204 when erroneously finding no mapping to DSPs. Appx26-28. Dr. Wells' cited testimony provides no such support. In it, he only mentions DP RAM 204 once when discussing Figure 3. Appx3352(¶96). Indeed, DP RAM 204 appears only in Figure 3, which governs the order that data goes onto the TDM bus. It appears nowhere in Figure 6, which is what governs the TDM-bus-to-DSP mapping that admittedly occurs.

#### 4. The Board's §103 Ruling Based On Its New Rehearing Finding Cannot Be Affirmed.

As shown, the Board's determinative finding regarding Figure 6 was never advanced by IV and was made only in denying rehearing. That finding perpetuated rather than fixed the Board's Figure 3 error. "'An Agency may not

---

[2] IV mislabels the TDM Receiver as 180-1 instead of 182-1. *See* Appx1334(11:14-16) cited at Appx397.

change theories in midstream without giving respondents reasonable notice of the change' and 'the opportunity to present argument under the new theory.'" *SAS Inst., Inc. v. ComplementSoft, LLC,* 2016 WL 3213103, at *7 (Fed. Cir. June 10, 2016)(internal citation omitted); *see In re: Magnum Oil Tools Int'l,* 2016 WL 3974202, at *10 (Fed. Cir. July 25, 2016) ("[T]he Board must base its decision on arguments that were advanced by a party, and to which the opposing party was given a chance to respond."). The Board's Figure 6 finding is unsupported and should be reversed. At a minimum, this new theory cannot be affirmed because it was not based upon any argument advanced by IV, and because Ericsson had no opportunity to respond.

#### 5. IV's Unaccepted Arguments About VME Bus And Processor Speeds Cannot Salvage the Board's Decision.

Unable to support the rehearing finding, IV alternatively suggests that "[w]hether the '480 reference's basestation could do TDM-bus-to-DSP mapping is of no moment." Opposition 42-44. That is clearly "of moment" because it is the sole basis for the Board's §103 conclusion.

IV's suggests, instead, that the Board's decision is supported by IV's unaccepted "speed-based" assertions regarding the VME bus and processor in the '480 Patent's basestation. Opposition 42-44. Because those arguments were directly refuted by Ericsson, they cannot provide an alternative basis for affirming the Board. *See infra,* II(F)(1).

### F. IV's Reasons For Remand Cannot Avoid Reversal.

Finally, IV offers three reasons why this Court should only remand the Board's flawed §103 determination. Opposition 48-54. None justify a remand instead of reversal.

#### 1. IV's Uncredited Arguments About VME Bus Speeds Provide No Basis For Remand.

IV again advances its unresolved arguments about whether the '480 Patent's asynchronous VME bus was fast enough to "input new mapping information at every hopping boundary." Opposition 48-49. However, Dr. Wells conducted no scientific analysis to determine whether the '480 Patent's VME bus could update the mapping every hopping period, but simply presumed that it could not. Opening 8.

Dr. Stark's detailed scientific analysis proved that frequency hopping was well within the capabilities of the basestation controller and that the VME bus speeds were actually 5770 times fast enough to support such frequency hopping. *See* Opening 8, 28 (citing Appx2500-2508); Appx2691-2692(166:15-167:2). Moreover, it would have been obvious to add more memory to overcome any synchronicity/timing issues. *See supra* section II(D).

While IV ignores Ericsson's evidence, it was entirely unrebutted. Hence, IV's unsubstantiated expert testimony, already disproved by the only legitimate

scientific analysis of record, creates no grounds for remand. *See* Opening 51-52 & n.7.

### 2. IV's "Artisan" Arguments Utilize A Legally Incorrect Definition Of A POSA.

The Board adopted the parties' agreement that a POSA would have a pertinent B.S. degree and three years additional experience. Appx21. However, IV now contends there was "serious disagreement" over what such POSA would have known to do. Opposition 50.

IV's position is premised upon a legally incorrect characterization of a POSA. *See Tyco Healthcare Group LP v. Ethicon Endo-Surgery, Inc.*, 774 F.3d 968, 978 (Fed. Cir. 2014) ("one of ordinary skill is one of 'ordinary creativity' that knows how to combine familiar prior art elements"); *Ex parte Hiyamizu,* 10 USPQ2d 1393, 1394 (BPAI 1988) (the hypothetical POSA "would, of necessity have the capability of understanding the scientific and engineering principles applicable to the pertinent art"). As a matter of law, IV and Dr. Wells cannot disregard the hypothetical POSA's presumed knowledge of the relevant art as a basis to argue that such a POSA would have difficulty combining it.

Moreover, "[o]bviousness is determined entirely with reference to a *hypothetical* person having ordinary skill in the art." *Standard Oil Co. v American Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985) (internal quotes omitted). As IV concedes, Dr. Wells' testimony was based on inabilities of actual people that he

supervised. Opposition 50; Appx2592-2594(67:9-69:3). Not reflecting the requisite hypothetical POSA, what those real persons allegedly could have done is irrelevant. Hence, IV's alleged disagreement over whether the agreed hypothetical POSA could have combined the '480 Patent and the explicitly-referenced GSM standard provides no basis for avoiding reversal.

**3. Claim 5 Provides No Basis For Remand.**

Finally, IV seeks a remand on only Claim 5. Opposition 51-52. Incorrectly deeming Ericsson's claim 5 showing as "thread-bare," IV looks in the wrong place. The Petition's obviousness analysis incorporated its anticipation analysis, which explained how the DP RAM Enable 202 "would store 'current mapping signals and next mapping signals' as required by GSM 05.02." Appx257; Appx266-268.

The Petition also cited Dr. Stark's anticipation analysis on claim 5, including that "each of the DP-RAMs have two separate address and data ports for reading and writing data" and that "a large memory could store multiple mappings (including current and future) of frequency domain data to TDM bus slots." Appx1054-1056(¶102). Because the memory is dual port, it could be "incrementally updated with mapping signals placed in locations that have already been used." Appx2918-2920(162:14-164:14)("if you are reading out address 27 of the current mapping, you could be writing into slot 1 of the next mapping signal."); Appx2509-2510(¶27).

IV never disputes Ericsson's claim 5 obviousness proof on the merits. *See* Opening 65-66. If a second memory chip was needed to facilitate storing current and next maps, it would again have been routine to add one. Appx2512(¶30); Appx2920(164:4-14). Thus, there is nothing left to be addressed on remand for any claim.

## III. CONCLUSION

For the reasons stated, this Court should hold that Claims 1-10 and 12-16 are unpatentable as a matter of law.

Respectfully submitted,

Dated: August 11, 2016

/s/ Steven G. Spears

Steven G. Spears
MCDERMOTT WILL & EMERY, LLP
1000 Louisiana St., 39th Floor
Houston, TX 77002
713.653.1700
sspears@mwe.com
Attorneys for Petitioners-Appellants
Ericsson Incorporated and
Telefonaktiebolaget LM Ericsson

**United States Court of Appeals**
**for the Federal Circuit**
*Ericsson Inc. v. Intellectual Ventures I LLC*, 2016-1671

## CERTIFICATE OF SERVICE

I, Elissa Matias, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by MCDERMOTT WILL & EMERY, LLP, counsel for Appellants to print this document. I am an employee of Counsel Press.

On **August 11, 2016,** counsel has authorized me to electronically file the foregoing **Reply Brief for Appellants** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

Byron L. Pickard (Principal Attorney)
Lori A. Gordon
Ross G. Hicks
Michael D. Specht
Sterne Kessler Goldstein & Fox, PLLC
1100 New York Avenue, NW
Washington, DC 20005
202-772-8525
bpickard@skgf.com
lgordon-ptab@skgf.com
rhicks@skgf.com
mspecht@skgf.com

Paper copies will also be mailed to the above principal counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court within the time provided in the Court's rules.

August 11, 2016 /s/ Elissa Matias
Counsel Press

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. App. P. 37(a)(7)(C), the undersigned hereby certifies that the foregoing REPLY BRIEF FOR PETITIONER-APPELLANT ERICSSON INCORPORATED AND TELEFONAKTIEBOLAGET LM ERICSSON was generated using the word-processing program Microsoft Word 2010, which states that the portions of the brief not excluded by Fed. R. App. P. 37(a)(7)(iii) and Fed. Cir. R. 32(b), contains 6,993 words. The brief is printed in a 14 point Times New Roman font.

Dated: August 11, 2016

/s/ Steven G. Spears
Steven G. Spears
Attorneys for Petitioners-Appellants
Ericsson Incorporated and
Telefonaktiebolaget LM Ericsson